IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KHALILAH JAMES , etc., et al.,

                Plaintiff,             Case No. 3:09 oe 40073

    -vs-

                                    MEMORANDUM OPINION

JOHNSON & JOHNSON, et al,

                Defendant.

KATZ, J.

On August 12, 2011, this Court granted summary judgment on Plaintiffs' failure-to-warn claims (Doc. Nos. 19 and 20). This matter is now before the Court on Defendants' unopposed motion for judgment on the pleadings on the remaining claims in this litigation. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons that follow, Defendants' motion is well taken.

### BRIEF BACKGROUND

This is a post-label case initiated in the Eastern District of Louisiana and transferred to the Northern District of Ohio as part of the MDL 1742[1]. Plaintiff Khalilah James alleges she suffered

---

[1] This case is one of many to arise out of the litigation involving the Ortho Evra® birth control patch. In March 2006, the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, centralized all civil litigation in the Northern District of Ohio, noting the following common allegations:

> i) the Ortho Evra contraceptive patch was defectively designed, and ii) plaintiffs received inadequate warnings regarding Ortho Evra's side effects and safety profile. All actions seek damages for personal injury and/or economic damages on behalf of users of Ortho Evra, asserting various state law claims, such as negligence, products liability, breach of warranties, and negligent and/or fraudulent misrepresentation regarding the risks of using Ortho Evra.

*In re Ortho Evra Products Liability Litigation*, 1:06 cv 40000, MDL 1742 (N.D. Ohio) (Doc. No. 1).

injuries attributable to her use of the Ortho Evra® birth control patch. James contends she was prescribed the patch in March 2009 by her physician in Hammond, Louisiana. (Doc. No. 1, ¶ 9.) On June 10, 2009, James was hospitalized "for loss of consciousness, chest pains, shortness of breach, dizziness, elevated blood pressure, and mild hypokalemia resulting in a diagnosis of pulmonary emolization." (*Id*.) The remaining claims in this litigation include allegations of a design defect, a manufacturing defect, nonconformity to an express warranty as well as derivative claims in the nature of loss of consortium by James' husband and children. Defendants now move for judgment on the pleadings regarding the remaining causes of action. Plaintiffs have not filed an opposition thereto and the claims are now ripe for adjudication.

### MOTION FOR JUDGMENT ON THE PLEADINGS

*A. Applicable Legal Standard*

The same pleading requirements apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion for judgment under the pleadings pursuant to rule 12(c). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). On a motion for judgment on the pleadings, all well-pleaded allegations of the non-moving party must be taken as true. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). The pleadings must demonstrate sufficient factual matter, if taken as true, which state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 470 (2007). "A plaintiff falls short if [they] plead[] facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct. . . .'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir.) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50) *cert denied*, 131 S.Ct. 1047 (2011). *Accord Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.), *cert denied*, 129 S.Ct. 600 (2008).

*B. Claim of Design Defect*

Louisiana's Product Liability Act ("LPLA") provides the "exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. Ann. § 9:2800.52. To establish liability under this statute a plaintiff must demonstrate the manufacturer's product was unreasonably dangerous and that damage proximately caused by a characteristic of the product arose from a reasonably anticipated use of the product. *Id*. § 9:2800.54. To establish a claim of design defect, the claimant must show "a product is unreasonably dangerous in design if, at the time the product left the manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damages; and
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product."

La. Rev. Stat. Ann. § 9:2800.56.

The Plaintiffs invoke the product at issue as "defective and unreasonably dangerous as designed, taking into consideration the utility of the product and risks involved in its use," (Doc. No. 1 at ¶ 16(a)) but this does not satisfy the element of an alternative design. The lack of any reference to an alternative design under the LPLA has been held to be fatal to a 12(b)(6) challenge. *See Ivory v. Pfizer Inc.*, 2009 WL 3230611 (W.D. La. 2009). As Plaintiff's complaint fails to address a basic element, his claim for defective design is insufficient as a matter of law.

*C. Defective Manufacturing Claim*

To prevail on a construction or composition defect, a plaintiff must establish:

3

> (1) defendant is the manufacturer of the product; (2) the product proximately caused the plaintiff's damage; (3) the damaging characteristic of the product rendered it "unreasonably dangerous"; and (4) the plaintiff's damage arises from a reasonably anticipated use of the product.

*Rollins v. St. Jude Medical*, 583 F.Supp.2d 790, 800 (W.D. La. 2008) (citations omitted). The LPLA characterizes a product as unreasonably dangerous in construction or composition:

> if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

La. Rev. Stat. Ann. § 9:2800.55. Plaintiff's allegations invoke a formulaic recitation of a general claim but little else, for example:

> The Ortho Evra Patch was unsafe for its intended and/or reasonably foreseeable purposes and uses at the time it was distributed, sold or supplied by Defendants, Ortho-McNeil, Johnson Pharmaceutical, Johnson & Johnson and McKesson, because the known side effects and adverse consequences include precisely the injuries suffered by Petitioner James.

(Doc. No. 1 at ¶16(b).) By comparison, the plaintiff in *Rollins, supra*, provided sufficient detail in her defective manufacture claim as her complaint detailed how the defendants failed to manufacture and package the product according to FDA specifications. 538 F.Supp.2d at 800.

The test has been described as "[w]hether or not, in the context of this case, the causes of action pled by the plaintiff are supported with factual allegations sufficiently specific to give the defendant fair notice of what the claim is and the factual grounds on which the claim rests. *Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, 2011 WL 938785 (W.D. La. 2011), citing *Iqbal*, 129 S.Ct. 1950. In reviewing the complaint at hand there are causes of action pled but it is devoid of the factual grounds upon which those claims are premised. For that reason, this claim is insufficient as a matter of law.

4

*D. Nonconformity to an Express Warranty*

In establishing a claim because of nonconformity to an express warranty, a movant must show:

> A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

La. Rev. Stat. Ann. § 9:2800.58.

Here, plaintiff does not identify the express warranty or how she was induced to rely on that warranty in this instance. As noted in *Iqbal*, a complaint is insufficient "if it tenders 'naked assertions' devoid of 'further factual enhancements.'" 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). The lack of even a reference to a warranty renders this claim as insufficient for purposes of Rule 12 (c).

*D. Loss of Consortium Claims*

Under Louisiana law, a loss of consortium claim is derivative of the predicate tort. As Plaintiff's claims under the LPLA are insufficient as a matter of law, the loss of consortium claims cannot survive.

#### CONCLUSION

For the reasons stated above, Defendants' motion for judgment on the pleadings (Doc. No. 23) is granted. This case is closed.

IT IS SO ORDERED.

                                          S/ *David A. Katz*
                                          DAVID A. KATZ
                                          U. S. DISTRICT JUDGE